UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Tampa, Florida |
| | ) | |
| Plaintiff, | ) | No. 8:15-cr-409-T-33JSS |
| | ) | |
| vs. | ) | February 18, 2016 |
| | ) | |
| ANTHONY MORAIS, EDWIN | ) | 9:00 a.m. |
| HERNANDEZ, GREGORY ORTIZ, | ) | |
| and MARIO CASTILLO, | ) | |
| | ) | |
| Defendants. | ) | Courtroom 14B |

**TRANSCRIPT OF SENTENCING HEARING**

BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone: (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

# A P P E A R A N C E S

**GOVERNMENT COUNSEL:**

>**Walter E. Furr III, Assistant U.S. Attorney**
>United States Attorney's Office
>400 North Tampa Street, Suite 3200
>Tampa, Florida 33602
>(813) 274-6000

**MORAIS DEFENSE COUNSEL:**

>**Jenny L. Devine, Assistant Federal Public Defender**
>Federal Public Defender's Office
>400 North Tampa Street, Suite 2700
>Tampa, Florida 33602
>(813) 228-2715

**HERNANDEZ DEFENSE COUNSEL:**

>**Jorge Leon Chalela, Esq.**
>Jorge Leon Chalela, PA
>3030 North Rocky Point Drive, Suite 150
>Tampa, Florida 33607
>(813) 221-5600

**ORTIZ DEFENSE COUNSEL:**

>**Ernesto L. Luna, Esq.**
>Luna Law Office, LLC
>1900 South Harbor City Boulevard, Suite 317
>Melbourne, Florida 32901
>(321) 984-5151

**CASTILLO DEFENSE COUNSEL:**

>**James J. Armington, Esq.**
>James J. Armington, PA
>3410 Ridge Boulevard
>Palm Harbor, Florida 34684
>(727) 580-4832

>**ALSO PRESENT:**
>
>Jesse Leonor, Interpreter
>
>Gail Stafford,
>U.S. Probation Office

- - -

<u>**P R O C E E D I N G S**</u>

- - -

1      COURT SECURITY OFFICER:  All rise.

2      The United States District Court in and for the

3  Middle District of Florida is now in session.  The Honorable

4  Virginia M. Hernandez Covington presiding.

5      Please be seated.

6      THE COURT:  Good morning, everyone.

7      We are here for a sentencing in Case No.

8  8:15-cr-409-T-33JSS.

9      I'll begin by having counsel state their

10  appearance.  Who do we have for the government?

11      MR. FURR:  Good morning, Judge.  Terry Furr for

12  the United States.

13      MS. DEVINE:  Good morning, Your Honor.  Jenny

14  Devine on behalf of Mr. Morais.

15      MR. CHALELA:  Good morning, Your Honor.  Jorge

16  Leon Chalela for Mr. Edwin Hernandez.

17      MR. LUNA:  Good morning, Your Honor.  Ernesto Luna

18  on behalf of Gregory Ortiz.

19      MR. ARMINGTON:  Good morning, Judge.  James

20  Armington for Mario Castillo.

21      THE COURT:  The next order of business is to swear

22  in the Spanish interpreter.

23      (*Interpreter oath administered by the clerk.*)

1      THE INTERPRETER:  Good morning, Your Honor.  Jesse

2  Leonor, L-e-o-n-o-r.

3      THE COURT:  Good morning to everybody.  We also

4  have our representative from the probation office here.

5  Thank you very much.  I appreciate your being here.  I think

6  you are covering for Miss Shroyer.  Was this your case, too?

7      THE PROBATION OFFICER:  We each had two.

8      THE COURT:  But you are covering for her today.

9      THE PROBATION OFFICER:  Yes, ma'am.

10     THE COURT:  We have four defendants.  I will

11  sentence everybody at the same time.  Bear with me as I flip

12  back and forth to make sure I say everything I'm supposed to

13  say.  Mr. Furr, I just ask that you double-check.  Hopefully

14  I will have all the statutes that I have to cite correctly

15  cited, but it's a little bit of a challenge when you are

16  doing four defendants.  As I said, just bear with me.

17     So we are here, as I said, for the sentencing on

18  these four gentlemen, and I will do all four defendants at

19  the same time.

20     Anthony Morais, Edwin Hernandez, Gregory Ortiz,

21  and Mario Castillo, on November 30th, 2015 -- I think it's

22  all the same for all of you.  Yes.  You entered a plea of

23  guilty to Count One of the Indictment, charging you with

24  conspiracy to possess with intent to distribute a hundred

25  kilograms or more of marijuana while aboard a vessel subject

1   to the jurisdiction of the United States, in violation of

2   Title 46, United States Code, Sections 70503(a) and 70506(a)

3   and (b), and Title 21, United States Code, Section 960(b)2(G).

4        The Court has previously accepted your guilty plea

5   and has adjudged you guilty of that offense.

6        Just checking there, Mr. Furr.  It's 960(b)2(G)?

7   Just double-check that statute.  It's actually one that I

8   don't recall having seen before.

9        MR. FURR:  Judge, I'll check it.  Perhaps it's

10  because of the ten-year mandatory.  Let me double-check.

11       THE COURT:  Okay.  Just double-check to be on the

12  safe side.  Most of these I know by heart; but when I see one

13  that I don't recall having seen before, I just want to check.

14       MR. FURR:  Judge, that's correct.  And 2 is

15  because it's a 5- to 40-year offense, where most all the boat

16  cases we have seen unfortunately are ten.

17       THE COURT:  That's why I'm not familiar.  Thank

18  you for double-checking.

19       As to all four gentlemen, we have now reached the

20  stage in the proceedings -- I don't think I said, the Court

21  has previously accepted your guilty plea and has adjudged you

22  guilty of that offense.

23       We have now reached the stage in the proceedings

24  where it is my duty to address several questions to you and

25  your attorney and the counsel for the government.

1          Mr. Furr, have you had the opportunity to read the

2  presentence report?

3          MR. FURR:  Judge, I've read the PSRs for each of

4  the defendants.  I have no factual objections, nor do I have

5  any objections to how the guidelines are calculated.

6          THE COURT:  Thank you very much, Mr. Furr.

7          I'll now turn to each defendant individually.

8          Miss Devine, have you had the opportunity to read

9  and discuss with Mr. Morais the presentence report?

10         MS. DEVINE:  Yes, Your Honor.

11         THE COURT:  Do you have any objections as to the

12 factual accuracy of the report?

13         MS. DEVINE:  No, Your Honor.

14         THE COURT:  Do you wish to make any objections to

15 the probation officer's application of the guidelines?

16         MS. DEVINE:  No, Your Honor.

17         THE COURT:  There being no objections to the

18 factual statements and guideline calculations contained in

19 the presentence report, the Court adopts those statements as

20 its findings of fact and determines that the advisory

21 guidelines are:

22         Total Offense Level 25, Criminal History

23 Category I, 60 to 71 months' imprisonment, four years

24 supervised release, restitution is not applicable, 10,000 to

25 a $5 million fine, and a $100 special assessment.  That's for

1    Mr. Morais.

2           Now to Mr. Hernandez.  That is Mr. Chalela.

3    Mr. Chalela, have you had the opportunity to read and discuss

4    with Mr. Hernandez the presentence report?

5           MR. CHALELA:  Yes, Your Honor.

6           THE COURT:  Do you have any objections as to the

7    factual accuracy of the report?

8           MR. CHALELA:  No, Your Honor.

9           THE COURT:  Do you wish to make any objections to

10   the probation officer's application of the guidelines?

11          MR. CHALELA:  No, Your Honor.

12          THE COURT:  There being no objections to the

13   factual statements and guideline calculations contained in

14   the presentence report, the Court adopts those statements as

15   its Findings of Fact and determines that the advisory

16   guidelines are:

17          Total Offense Level 23, Criminal History

18   Category I, 60 months of imprisonment, four years of

19   supervised release, restitution is not applicable, 10,000 to

20   a $5 million fine, and a $100 special assessment.

21          All right.  Next we have, let's see, Mr. Ortiz and

22   Mr. Luna.  Mr. Luna, have you had the opportunity to read and

23   discuss with Mr. Ortiz the presentence report?

24          MR. LUNA:  Yes, Your Honor.

25          THE COURT:  Do you have any objections as to the

1  factual accuracy of the report?

2          MR. LUNA:  We have no objections, Your Honor.

3          THE COURT:  Do you wish to make any objections to

4  the probation officer's application of the guidelines?

5          MR. LUNA:  No, Your Honor.

6          THE COURT:  There being no objections to the

7  factual statements and guideline calculations contained in

8  the presentence report, the Court adopts those statements as

9  its findings of fact and determines that the advisory

10 guidelines are:

11          Total Offense Level 23, Criminal History

12 Category I, 60 months of imprisonment, four years of

13 supervised release, restitution is not applicable, 10,000 to

14 a $5 million fine, and a $100 special assessment.

15          And then, finally, we have Mr. Castillo and

16 Mr. Armington.  So, Mr. Armington, have you had the

17 opportunity to read and discuss with Mr. Castillo the

18 presentence report?

19          MR. ARMINGTON:  Yes, ma'am.

20          THE COURT:  Do you have any objections as to the

21 factual accuracy of the report?

22          MR. ARMINGTON:  No, Your Honor.

23          THE COURT:  Thank you.  Do you wish to make any

24 objections to the probation officer's application of the

25 guidelines?

1          MR. ARMINGTON:  Judge, I did make one objection.

2     I'll briefly speak about it.  I did object to the no

3     adjustment for the role in the offense.  I understand my

4     client's role was similar to the other two co-defendants,

5     Edwin Hernandez and Gregory Ortiz, although they did not file

6     the same objection.  I am arguing that the Court could

7     consider him as a minor role based on the fact that he was

8     simply paid to perform the tasks of a mariner.  He had no

9     proprietary interest in the merchandise, no decision-making

10    authority, and that this conspiracy did include organizers

11    and the owner of the boat, the owner of the drugs, and

12    whoever recruited these people.  So that's basically my

13    argument, Your Honor.

14          THE COURT:  Thank you.  I'll hear a response from

15    the government.

16          MR. FURR:  Judge, the issue is controlled by the

17    case of *U.S. versus Deveron*, which was a -- I think the

18    entire Eleventh Circuit ruled on this.

19          First of all, the defendant has the burden of

20    proving the mitigating role by a preponderance, which I think

21    the defense attorney alluded to in his motion.  The focus,

22    though, that the Court has to do is assess whether the

23    defendant is a minor or minimal participant in the relevant

24    conduct attributed to him in calculating the base offense.  I

25    think in this case it was the quantity of marijuana that he

1  and the other three gentlemen on the boat jointly possessed.

2        The *Deveron* case says, essentially, under those

3  facts there can be no downward role adjustment.

4        By the way, I have no doubt that there is people

5  somewhere else that were above these guys and there was

6  somebody who was going to get this dope that might have paid

7  more money, but that's not the issue before us here.

8        If they were being held accountable for other

9  drugs that other people possessed, then it's something for

10  the Court to consider, the quantity of drugs you possessed

11  when you are arrested.  You can't be less responsible for

12  those drugs than most other people when you are personally

13  possessing them.

14        The only other thing I would point to is the

15  concurrence by judge -- I think it's by Judge Carnes in this

16  opinion in *Deveron*, which is probably the strongest language

17  you'll ever see a judicial officer use, just saying there can

18  never be a role adjustment under personal possessory facts

19  for somebody for the quantity of drugs they possessed.

20        THE COURT:  I think the best argument that you

21  have is the one you just said with respect to you're not

22  holding them accountable for what the big-league people in

23  wherever it happened to be -- Bogotá or someplace else -- are

24  doing.

25        MR. FURR:  Judge, there is never a role issue for

a defendant when they are held responsible for that which
they did or they possessed.  It's only when you are
calculating others, adding up their conduct and attributing
it to potentially someone else, that you get into roles.
This is just not a role situation.  Thank you.

THE COURT:  That's a very valid argument.  I
certainly understand, Mr. Armington, your client there is,
you know, a small fish; and I can certainly understand why he
would feel that he's entitled to an adjustment.  But the way
you analyze it the way Mr. Furr did, which I think is
correctly analyzed, then he's not entitled to a role
adjustment.

Even if we didn't have the *Deveron* case, which is,
of course, binding upon me because it's an Eleventh Circuit
case, that argument or that analysis to me alone is
sufficient to deny him the role adjustment.  It just makes
sense.  It simply does.

While I'm sorry for these gentlemen and the
difficult situation they find themselves in, particularly
when you think of how many millions and millions of dollars
some high-level person sitting someplace else is reaping
without suffering any consequences; but that's,
unfortunately, the situation your clients find themselves in.

So I note the objection, but I overrule it.

Anything else there, Mr. Armington?

1           MR. ARMINGTON:  No, Your Honor.

2           THE COURT:  Thank you.

3           All right.  So let's see, then, for your client

4    it's a Total Offense Level 23, Criminal History Category I,

5    60 months of imprisonment, four years of supervised release,

6    restitution is not applicable, 10,000 to a $5 million fine,

7    and a $100 special assessment.

8           So, Mr. Furr, I'm going to come back to you in

9    just a minute here.  Just to recap, for Mr. Morais, he was --

10   just to refresh my memory here, he was the captain.

11          MR. FURR:  Judge, he identified himself as the

12   captain, which is the reason why his guidelines are higher.

13          THE COURT:  Mr. Morais we are looking at 60 to 71

14   months; for Mr. Hernandez we are looking at 60 months; for

15   Mr. Ortiz we are looking at 60 months; and for Mr. Castillo

16   we are looking at 60 months' guideline sentence.

17          So, Mr. Furr, I'll turn to you.  Do you know of

18   any reason why this Court should not now proceed with

19   imposition of sentence?

20          MR. FURR:  Judge, I have no reason at all as to

21   any of these defendants.

22          THE COURT:  Okay.  And is there a statement you

23   would like to make with respect to what an appropriate

24   sentence for these gentlemen would be?

25          MR. FURR:  Judge, I believe that for -- well, I

1   think that the statutory minimum, which is 60 months, is

2   certainly appropriate for Mr. Hernandez, Mr. Ortiz, and

3   Mr. Castillo.

4            Mr. Morais identified himself as the captain.  I

5   don't really know what else to hold him responsible for.  I

6   realize the guidelines say two more levels, which jacks him

7   up some.

8            Probably some sentence that's in excess of 60

9   months.  How much above that, I leave that totally in your

10  hands.

11           THE COURT:  On the one hand you admire someone's

12  honesty, stepping up to the plate and saying I'm the captain,

13  for better or for worse.

14           MR. FURR:  I have ten of these cases; and for the

15  last few months, nobody has -- somehow every one of those

16  cases is just a group of guys out on a boat.  No, he stepped

17  up and said that.

18           For the record, all four of the defendants have

19  been debriefed.  They have been cooperative with law

20  enforcement.  This has not been difficult to deal with on any

21  of them.  That's all that I have.

22           THE COURT:  I'll give him -- I'll hear what

23  Miss Devine has to say.  I'll cross that bridge in just a

24  moment and hear what she has to say.  And these are all sad,

25  sad stories.

1    Miss Devine, I'll go defendant by defendant.  Do

2  you know of any reason why this Court should not now proceed

3  with imposition of sentence?

4    MS. DEVINE:  No, Your Honor.

5    THE COURT:  Do you wish to make a statement or

6  present any information in mitigation of the sentence?

7    And, Mr. Morais, you have the right to address the

8  Court directly.  You don't have to.  Miss Devine can speak on

9  your behalf, but I want to make sure you understand you have

10  that right.  Do you understand that, Mr. Morais?

11    DEFENDANT MORAIS:  Yes, Your Honor.

12    THE COURT:  Going through his history here,

13  Miss Devine, it's just another, you know, sad story.  Let me

14  turn to him.

15    This is the gentleman who, let's see, had the

16  issues with Nicaragua and he fled to Costa Rica after he was

17  forced to enlist in the Sandinista paramilitary.  He returned

18  to Nicaragua for a while and spent a month in Jamaica and

19  intends to return to Nicaragua.  Has several children, some

20  younger.  I think they are younger, right?  Age nine.

21    MS. DEVINE:  Your Honor, I think a seven- and

22  nine-year-old.

23    THE COURT:  He's had a girlfriend, I guess, for

24  about 18 years, it says.  He has some health issues.  I want

25  to make certain we address those.

1      MS. DEVINE:  Thank you, Your Honor.

2      THE COURT:  Diabetes, eye problems.  Maybe that's

3  even from the diabetes.  Arm pain and numbness in your

4  fingers.  That's not good.  That needs to be taken care of,

5  particularly since I see here he suffers from high

6  cholesterol.  All these things need to be addressed.

7      I'll hear what you have to say.  There is a

8  60-month minimum, five years.  So I do admire that he

9  acknowledged his responsibility.  A lot of people are coward

10  and they won't do that, and your client did.

11      MS. DEVINE:  He certainly did, Your Honor.  And 60

12  months is what I'm asking the Court to consider here.  It is

13  three months higher than his low end.  I know that it's

14  generally the Court's practice to give the captain a slightly

15  higher sentence than the rest.  The low end is without the

16  statutory minimum mandatory.

17      THE COURT:  How did you calculate that?

18      MS. DEVINE:  Without the 60-month statutory

19  minimum mandatory --

20      THE COURT:  There has to be a distinction, though,

21  Miss Devine.

22      MS. DEVINE:  Yes.

23      THE COURT:  You can see, Mr. Furr doesn't have

24  real strong feelings.  And, quite frankly, neither do I.  He

25  deserves 10 or 11 or 12 or 13 or 14 more months than the

1  other guys.  Particularly, these are little boats.  But

2  something.  He's probably getting paid more than the other

3  people, or at least he had some type of authority over them,

4  even if they are all making the same payment.  So there's got

5  to be something.

6       MS. DEVINE:  That's always difficult for us to put

7  our finger on exactly when we are not privy to the

8  debriefings of the other defendants.

9       I'm not necessarily able to tell the Court myself,

10 and I think the agent would be better equipped to do so.

11 Whether that's true or not in this case, whether he was paid

12 more or not, whether he had any authority over the others or

13 not, he certainly came forward and admitted to being the

14 captain of the vessel.

15      He did debrief truthfully.  He has accepted

16 responsibility.  I think the Court has gone through a lot of

17 the 3553 factors already; but I would also note that he grew

18 up extremely poor, with a single mother.  So he has struggled

19 financially, as many of these clients do in these cases, for

20 his entire life.  So he did make an extremely poor decision

21 here to do this thing.

22      He tried to financially support his two minor

23 children.  He has no criminal history.  He has no history of

24 behaving in this manner, and he understands that he needs to

25 serve a period of prison to make up for what happened here.

1          I am concerned about his medical conditions.  The

2   Court correctly highlighted those.  What he has communicated

3   to me is that his doctor has said he needs to be on a lower

4   bunk and he needs to be in a warmer climate to make, I think,

5   the arthritic condition a little bit easier to take.  He is

6   asking to stay in Florida, if that's at all possible, for

7   that reason.

8          THE COURT:  Remind me after I impose sentence and

9   I do the recommendations because I don't want to miss any of

10  these, because they are important for his health.

11         MS. DEVINE:  Yes, Your Honor.

12         THE COURT:  We will go through that.

13         Anything else, Miss Devine, with respect to the

14  actual sentence 60 versus 63?  Because, of course, as you

15  said, the guideline range is 57 to 71 months because it's a

16  Total Offense Level 25 and a Criminal History Category I.

17  But because the minimum mandatory is five years, it's 60 to

18  71 months.

19         MS. DEVINE:  We understand that, and he

20  understands that 60 months is the least that the Court can do

21  today.  I would just ask the Court, in considering how much

22  above 60 you might go, consider that the low end is 57 here.

23  And so, for example, a 63-month sentence would be six months

24  higher than what would otherwise be the low end here.

25         THE COURT:  Yes, but the other guys are getting --

1  they are looking at a minimum mandatory of five years.

2          MS. DEVINE:  I know, Your Honor.

3          THE COURT:  There has to be a distinction, even if

4  it's a minor one.  I just have to do something to distinguish

5  them.  That's all.  It won't be much, believe me, but there

6  has to be some distinction.

7          MS. DEVINE:  I understand, Your Honor.  He has

8  written a letter to the Court.  It's in Spanish, if I can

9  hand it to the interpreter to read to Your Honor.

10          THE COURT:  Sure.

11          THE INTERPRETER:  February 18th, 2016.  Madam

12  Virginia M. Hernandez Covington, United States District

13  Judge.  Madam Judge, I have made a mistake and I need to pay

14  for it.  I ask God almighty for forgiveness and that you

15  might give me an opportunity to be promptly with my family.

16          I also ask you for the favor of sending me to a

17  prison where I will be able to work to learn a trade so that

18  I may have a change in life when I am out of prison,

19  especially something in electro-mechanics and computers.

20          Thank you for the attention you have afforded me.

21  Cordially, Anthony Morais.

22          THE COURT:  Thank you very much.

23          Remind me, Miss Devine, when we get to the

24  recommendations that I cover everything that he wants me to

25  cover.

1          MS. DEVINE:  Thank you, Your Honor.

2          THE COURT:  Anything else, Mr. Morais?  I

3    appreciate it.  I will impose sentence at the same time for

4    all four gentlemen.

5          Anything else?

6          MS. DEVINE:  No, thank you, Your Honor.

7          THE COURT:  Thank you.

8          Now I'll go to Mr. Edwin Hernandez, represented by

9    Mr. Chalela.

10          All right.  Mr. Chalela, do you know of any reason

11   why this Court should not now proceed with imposition of

12   sentence?

13          MR. CHALELA:  No, Your Honor.

14          THE COURT:  This is your opportunity to make a

15   statement, present any information in mitigation of the

16   sentence.

17          And, Mr. Hernandez, you also have the right to

18   address the Court.  You don't have to, but I wanted to make

19   certain that you understand that you have that right.

20          Do you understand that, Mr. Hernandez?

21          DEFENDANT HERNANDEZ:  Yes.

22          THE COURT:  Thank you.  Go ahead, Mr. Chalela.

23          MR. CHALELA:  Thank you, Your Honor.

24          Before the Court is a Title 46 case.  Because it's

25   a Title 46 case, the safety valve provision cannot waive the

1 minimum mandatory.

2 THE COURT: Okay. I think you are right on that.

3 Probation agrees with that because of Title 46?

4 THE PROBATION OFFICER: Yes, Your Honor.

5 MR. CHALELA: However, the two-level reduction for

6 safety valve continues, under the case law, to be applicable;

7 and the probation office has correctly reduced the suggested

8 guideline sentence with the two-level under 5(c), reduction

9 for the safety valve.

10 Lamentably, I would respectfully submit, when

11 implementing the safety valve the intent was for low-level

12 people with no prior record, with no indicia of weapons, no

13 indicia of assault or putting in fear folks that honestly

14 debrief intra their case and take responsibility with law

15 enforcement with what they were involved in, should get a

16 chance to have that minimum mandatory waived.

17 THE COURT: Let me ask a question, Mr. Furr, or

18 probation. Let's say he, down the road, did a Rule 35

19 cooperation. That wouldn't make any difference either for

20 Title 46, or would it?

21 MR. FURR: Judge, it would if and when we file a

22 motion on behalf of this defendant or any other defendant.

23 You then have the discretion to go below. If the case that

24 keeps you from doing it right now is *Pettis* out of the

25 Eleventh Circuit, 2012, it was one of these cases, and the

1  precise argument was made, and the panel, which was

2  Edmondson, Kravetz, and a visiting circuit judge, said no.

3  Because this is not -- the Title 46 charges that these

4  gentlemen and all the boat people are charged under the

5  705.03, or whatever it is, that is not enumerated at 18 USC

6  3553(f), and that is what is controlling.

7          THE COURT:  You would have to charge it

8  differently to get a different result.

9          MR. FURR:  If we were here on -- if these

10 gentleman had been stopped going down an interstate with

11 these drugs in their car, this is a perfectly good argument.

12 It just doesn't work under this statute.

13         THE COURT:  Right.  And this is what's been used

14 to charge because that's the violation that has happened.

15 It's a Title 46, on the international waters.

16         MR. FURR:  That's correct, Judge.

17         THE COURT:  So I think you are out of luck there,

18 Mr. Chalela.  I wish I could do something.  These are all

19 good people, but keep in mind that -- I mean, this is

20 marijuana as opposed to cocaine.  Most of these other people

21 that I sentence are looking at a lot more than five years.

22 They are looking at ten years, is normally what they are

23 looking at.

24         So, I mean, yes, it's tough, on the other hand,

25 when you compare it to other people who are going to go to

1  prison for -- who are in prison for ten years.

2       MR. CHALELA:  Yes, Your Honor.  Although, legally,

3  I would respectfully submit, as an accident, that wasn't

4  intended in passing the safety valve, although it is not

5  consistent with the passing of the safety valve, as applied

6  to this classic case of people who deserve the safety valve.

7       THE COURT:  The Eleventh Circuit, they tell me

8  what to do.  That's just the way it is.

9       MR. CHALELA:  I understand that.  That's why I

10  didn't raise a legal objection because I don't have a good

11  faith legal objection.  But I am presenting this reality of

12  the dynamic instantly before the Court in mitigation.

13       THE COURT:  But I can't go below 60 months.

14       MR. CHALELA:  In mitigation, so that Your Honor

15  will please consider not sentencing higher than --

16       THE COURT:  Don't worry about it.  They are all

17  getting 60 months.  Every single one is getting 60 months,

18  and the captain is probably getting 63.

19       MR. CHALELA:  So that is the reason why I mention

20  that dynamic.

21       Other than that, Your Honor, it's purely academic.

22  There is no reason for me to mention that the marijuana was

23  going from Jamaica to Costa Rica.  It was never intended to

24  even come to these United States.

25       THE COURT:  Still, drugs are drugs.

1            MR. CHALELA:  I understand.  And there is extreme

2    poverty and the eight kids that need support, and at least

3    three of them were going to Costa Rica for day labor type of

4    jobs to try to maybe buy a motor boat so they could be better

5    fishermen for their family.

6            All those things are purely academic.  So I

7    respectfully ask that Your Honor take into mitigation all the

8    factors, including something that is one of the most

9    important criteria under 3553(a)(1) through (7), which is the

10   guidelines recommendation, which is 46 months.

11           Thank you, Your Honor.

12           THE COURT:  But I'm stuck with 60 months.  I can't

13   sentence to 46 months.

14           MR. CHALELA:  Correct.  Thank you, Your Honor.

15           THE COURT:  You are welcome.

16           Okay.  Would your client like to say anything to

17   the Court?  This is your opportunity if you would like,

18   Mr. Hernandez.  You don't have to, and you heard what I said

19   earlier.  It's 60 months.  There is just no way around that.

20   That's what I'm going to impose, but you certainly have the

21   right to address the Court if you would like to say something.

22           DEFENDANT HERNANDEZ:  Good morning, Madam Judge

23   and Mr. Prosecutor.

24           I, Mr. Hernandez, apologize to you.  And I ask

25   forgiveness of you and your nation because I did not do it

1    with an ill intent.

2          And give me one more opportunity to be able to

3    study English, computers, and to be able to work so that I

4    can send some money to my family.

5          Thank you very much for everything.

6          THE COURT:  Okay.  Thank you so much for those

7    nice comments.  I appreciate it.

8          All right.  Next we have, let's see, Mr. Ortiz,

9    represented by Mr. Luna.

10          Mr. Luna, do you know of any reason why this Court

11    should not now proceed with imposition of sentence?

12          MR. LUNA:  No, Your Honor.

13          THE COURT:  Do you wish to make a statement,

14    present any information in mitigation of the sentence?

15          And, Mr. Ortiz, you have the right to address the

16    Court directly.  You don't have to, but I wanted to make

17    certain that you understand that you have that right.

18          Do you understand that, Mr. Ortiz?

19          DEFENDANT ORTIZ:  Yes.

20          THE COURT:  Very good.  I'll hear you now,

21    Mr. Luna.

22          MR. LUNA:  Thank you, Judge.

23          As the Court knows, I filed a sentencing

24    memorandum making the same type of arguments that Mr. Chalela

25    did as far as the safety valve with the understanding that

1  the 60 months is what the judge is obligated to -- can't go

2  any less than that.  So I just -- in light of what the judge

3  said that 60 months is what they are going to get, that's all

4  that I have to say, Judge.

5          Mr. Ortiz, however, would like to be sentenced

6  somewhere in Florida.  He asks for Coleman and be allowed to

7  take English classes and some education and work as well so

8  he can send money to his family.

9          THE COURT:  As I said, I'll sentence all these

10 gentlemen to 60 months.  He's one of the first, though, that

11 I've seen that at least admitted that he uses marijuana.  I

12 don't recall seeing that ever, I think, on these boat cases.

13 Not that others haven't.  He's just the first one to have

14 admitted it.

15         MR. LUNA:  Right.

16         THE COURT:  I don't know if they could --

17 sometimes, because there are limited resources, the federal

18 prison system uses those limited resources for people who are

19 going to stay in the United States and not return to their

20 home country, whether they want to be here or not.

21         So I don't know if the resources are available;

22 but I would say somebody who smokes marijuana, he says, three

23 times a day and he says he uses it with respect, that I

24 interpret to mean he's not addicted to it, but that's still

25 not a good thing.

1        MR. LUNA:  What he meant, Judge -- and he's told

2   that to probation.  Where he lives, where he's from, the

3   marijuana is respected.  They use it.  So it isn't like he

4   uses it or he has a habit of it.  It's a different culture,

5   Judge.

6        THE COURT:  That's news to me.  I know a lot of

7   people from Nicaragua, and that's the first time I've heard

8   somebody say they just use it and that's no big deal.  That's

9   fine.  Whatever.  I see it as a problem.

10       MR. LUNA:  All right, Judge.

11       THE COURT:  Let's see, next we have -- I'm sorry,

12  did your client wish to say anything?

13       Do you wish to say anything Mr. Ortiz?

14       MR. LUNA:  No, Your Honor.

15       THE COURT:  Okay.  All right.  Last, we have

16  Mr. Castillo represented by Mr. Armington.

17       Mr. Armington, do you know of any reason why this

18  Court should not now proceed with imposition of sentence?

19       MR. ARMINGTON:  No, ma'am.

20       THE COURT:  Do you wish to make a statement or

21  present any information in mitigation of the sentence?

22       MR. ARMINGTON:  Judge, I'll be real brief.

23       It's been a pleasure knowing him.  He's been a

24  great client and very polite and cooperative from the get-go.

25  He is 23 years old.  He's the youngest of 10 siblings.  So

1  he's the Benjamin of his family, and he's missed, and he
2  wants to go home.
3          I know he's sorry for what he did.  He also has an
4  interest in going to Coleman, learning how to both write and
5  read better in English.  He actually speaks some English
6  already.
7          THE COURT:  Good.  And I realize here, reading
8  this, too, that your client also acknowledged smoking
9  marijuana.  So I'm glad they were honest.  You've got to give
10  it to them.  A lot of other people aren't so forthcoming, and
11  hopefully they will be able to get some help in prison.
12          Well, twice a month is not as bad as three times a
13  day, but it's still not a good thing to use marijuana.
14  Whatever your situation is, it's just not a good thing.
15          MR. ARMINGTON:  I understand, Judge.  He would
16  perhaps like to study either electricity or computers or
17  carpentry.  He would also like to work in Unicor if he can.
18          THE COURT:  Well, at least if they can all learn
19  English while they are here, at least it's something positive
20  for them.
21          All right.  Would you like to say anything,
22  Mr. Castillo?  You don't have to, but you can.
23          DEFENDANT CASTILLO:  Of course.  Before anything,
24  I would like to apologize to God for what I did, because it's
25  something that I should not have done.  But I did it because

1   I come from a very poor nation.

2          And I apologize to you, Madam Judge, and to

3   Mr. Prosecutor, because I am in your country, and may God

4   bless you.  Thank you very much.

5          THE COURT:  Thank you very much, Mr. Castillo.

6          Okay.  Anything else from anybody before I impose

7   sentence?  I already told you what I was going to do with

8   these gentlemen, but anything else before I impose sentence?

9   And as I said, I'm going to sentence all four gentlemen at

10   the same time, so just bear with me on it.

11          MR. CHALELA:  Your Honor, my client also requests

12   Coleman.

13          THE COURT:  Okay.  And I want to get to that.  I

14   want to make certain that I cover this for everybody.  So,

15   Mr. Chalela, if I skip something, I'm going to look to you to

16   remind me, okay?

17          Let's see.  The Court has asked each defendant why

18   judgment should not now be pronounced.  After hearing each

19   defendant's response, the Court has found no cause to the

20   contrary.

21          The parties have made statements on their behalf

22   or have waived the opportunity to do so, and the Court has

23   reviewed the presentence report and the advisory guidelines.

24          Pursuant to Title 18, United States Code, Sections

25   3551 and 3553, it is the judgment of the Court that the

1  Defendant Anthony Morais is hereby committed to the custody

2  of the Bureau of Prisons to be imprisoned for a term of --

3  earlier I said 63 months, but I will do 62 months, so that's

4  five years and two months.

5       Let's see, Mr. Hernandez, Mr. Ortiz, and

6  Mr. Castillo are all sentenced to a term of imprisonment of

7  60 months.  All right.  So 60 months.

8       The parties have all made statements in their

9  behalf or have waived the opportunity to do so.  I have

10 reviewed the presentence report for all four defendants and

11 the advisory guidelines.

12      Pursuant to Title 18, United States Code, Sections

13 3551 and 3553, it is the judgment of the Court, as I said

14 previously, Anthony Morais for 62 months, and the other

15 gentlemen -- Mr. Hernandez, Mr. Castillo, and Mr. Ortiz --

16 are sentenced to prison for a term of 60 months.

17      This is for all four defendants now.  Upon release

18 from imprisonment you shall serve a four-year term of

19 supervised release.  While on supervised release you shall

20 comply with the standard conditions adopted by the Court in

21 the Middle District of Florida.  In addition, you shall

22 comply with the following special conditions:

23      If the defendant is deported, he shall not

24 re-enter the United States without the express permission of

25 the appropriate governmental authority.

1          The defendant having been convicted of a

2    qualifying felony shall cooperate in the collection of DNA as

3    directed by the probation officer.  The mandatory drug

4    testing requirements of the Violent Crime Control Act are

5    waived.

6          However, the Court orders the defendant to submit

7    to random drug testing not to exceed 104 tests per year.

8    Based on the financial status of the defendant, the Court

9    waives imposition of a fine.

10         I guess there are no forfeitures, are there?  We

11   don't want to forfeit the little vessel or anything else.

12         MR. FURR:  Judge, there are no forfeitures.

13         THE COURT:  Okay.  It is further ordered that each

14   defendant shall pay to the United States a special assessment

15   of $100, which shall be due immediately.

16         After considering the Advisory Sentencing

17   Guidelines and all the factors identified in Title 18, United

18   States Code, Sections 3553(a)(1) through (7), the Court finds

19   that the sentence imposed is sufficient but not greater than

20   necessary to comply with the statutory purposes of sentencing.

21         And, Mr. Furr, did each of the four defendants

22   plead to a plea agreement with count -- entering a guilty

23   plea to Count One in return for the dismissal of Count Two?

24         MR. FURR:  They did, Judge, and the government

25   would move for each of the defendants to dismiss Count Two.

1          THE COURT:  All right.  Thank you.

2          The Court has accepted the plea agreement because

3    it is satisfied that the agreement adequately reflects the

4    seriousness of the actual offense behavior and that accepting

5    the plea agreement will not undermine the statutory purposes

6    of sentencing.

7          Under the plea agreement, the defendant has

8    entered a guilty plea to Count One in return for the

9    dismissal of Count Two.  In accordance with the plea

10   agreement, it is ordered that Count Two of the Indictment be

11   dismissed, as you've just heard Mr. Furr has made that motion.

12         I'm going to go through in a moment -- after I

13   finish this, I'll tell you -- well, let me go ahead and tell

14   you why I've sentenced you.

15         This is the minimum that I can sentence three of

16   the defendants to.  I don't have any discretion because of

17   the minimum mandatory, but I think it's still a fair

18   sentence, nevertheless, all things considered.

19         Let's see, Mr. Morais, Miss Devine's client, I

20   just felt that something, albeit minor here -- it's 60

21   days -- was in order because he was the captain.  But,

22   Mr. Morais, I'll tell you, I very much admire your stepping

23   up and acknowledging that.  Otherwise, I would have sentenced

24   you probably to 66 months had you not done that.  So I

25   appreciate your honesty and your candor and your willingness

1  to accept responsibility.

2       All four of you, you couldn't be any more polite.

3  Every time I see these cases I'm always impressed with how

4  remorseful everybody is.  You are all good people.  Good,

5  hardworking people that just found themselves in a very

6  difficult situation.  I totally understand that; but as you

7  can see, it was a tremendous mistake because of how much you

8  miss your families.  What you want more than anything else is

9  to be with your families, to see your children, to see your

10 parents, those whose parents are still alive.  So, to me,

11 these cases are just a tragedy all the way around.  And

12 you're such nice, good, kind people who just found themselves

13 in a terrible situation.

14      But you are honest, hard working, and hopefully

15 you can use this situation, as difficult as it is, to try to

16 learn some skills that will help you when you return to

17 Nicaragua.  I think somebody wants to go to Costa Rica.

18      Is that right?  Your client, Miss Devine, wants to

19 go to Costa Rica?  Did I misread that?

20      MS. DEVINE:  I think his plan now is to return to

21 Nicaragua.  I don't think he any longer feels in danger there

22 and may return there.

23      THE COURT:  Whatever country you plan on returning

24 to, certainly speaking two languages is a big asset.  Those

25 of you who use drugs, whether it's -- I've not heard of it

1    being cultural.  Maybe in a small village it is, but I've

2    never heard that said to me before.  Whatever it is, so be

3    it.  You are just better off not using drugs.  Even if it's

4    marijuana it's still not a good thing.  And if there is a way

5    that we can get treatment for you when you are in prison,

6    then I'm certainly going to recommend it in an effort to help

7    you kick that bad habit.

8              So, anyway, that's why I've sentenced you as I

9    have.

10             The Court having pronounced sentence, does counsel

11   for the defendants or government have any objections to the

12   sentence or to the manner in which the Court pronounced

13   sentence other than those previously stated for the record?

14             Miss Devine?

15             MS. DEVINE:  No, Your Honor.

16             THE COURT:  Mr. Chalela?

17             MR. CHALELA:  No, Your Honor.

18             THE COURT:  Mr. Luna?

19             MR. LUNA:  No, Your Honor.

20             THE COURT:  Mr. Armington?

21             MR. ARMINGTON:  No, ma'am.

22             THE COURT:  Each defendant is remanded to the

23   custody of the United States Marshal to await designation by

24   the Bureau of Prisons.

25             To the extent permitted by your plea agreement,

you have the right of appeal from the judgment and sentence within 14 days from this date.  Failure to appeal within the 14-day period shall be a waiver of your right to appeal.  The government may file an appeal from the sentence.

You are also advised that you are entitled to the assistance of counsel in taking an appeal; and if you are unable to afford a lawyer, one will be provided for you.  If you are unable to afford the filing fee, the Clerk of the Court will be directed to accept the Notice of Appeal without such fee.

Let me go defendant by defendant so that I can cover all of these things.

First of all, let me say, I always like them to try to do the work program, the Unicor program.  But a lady from probation did a very nice survey for me, and now Coleman is no longer doing Unicor.  At least for the time being.  So I don't know, maybe that will change in a year, maybe it will change in six months, maybe it will change in two years, but Unicor is not available if you are going to go to Coleman.

Now, just because I request Coleman doesn't mean you are going to get Coleman.  So I can make that recommendation in case they go someplace else and they want to do the Unicor program.  And I hope that you've explained to your clients about this.  If not, I'll say it right now.  Unicor is a program where you make desks and things like that

1  in prison and you get paid for it, and so that money is there

2  for you.  You can send it to your family.

3         I've always asked for people who are foreign

4  nationals who have not come illegally to the United States

5  but you are here legally because you've been brought here for

6  prosecution, to participate in this program so that you can

7  earn money, because I know how much you need the money and

8  how much it means to you.

9         So I think in other prisons you can do it, but not

10  here at Coleman.  At least not today.  Anything else?

11         Mr. Armington?

12         MR. ARMINGTON:  Your Honor, my client mentioned to

13  me he does want to work, so he had an interest in going to

14  McRae.  We would like to change it to McRae so he can work.

15         THE COURT:  Okay.  Hopefully they will let them do

16  that in McRae.

17         Let me go defendant by defendant so I don't lose

18  track.  Thank you, Mr. Armington.  There is no guarantee they

19  will let them.  I just want him to understand that.  I will

20  do my best because I think they are entitled to it.  I mean,

21  I feel very strongly they are.  They didn't come here

22  illegally.  They were doing something wrong, but they were

23  brought here for prosecution.  So they ought to be able to

24  take advantage of these programs even if they are not going

25  to stay in the United States; but my hands are pretty much

1  tied, but I will do everything I can.

2          Let's start with Miss Devine's client.  First of

3  all, where he would he like to be housed?

4          MS. DEVINE:  Your Honor, anywhere where he can

5  work.

6          THE COURT:  I will say, first and foremost, he

7  wants to participate in the Unicor program so that he can

8  earn money to send back to his family.  So I will make that

9  my first recommendation.  If Unicor is not available -- let's

10  do it this way:  If Unicor is not available to him, where

11  would he like to be housed?

12          MS. DEVINE:  In Florida or a warm climate, so

13  southeastern U.S.

14          THE COURT:  I will say, a place where the climate

15  is warm because he has arthritis, and so this is the medical

16  situation where it's less painful for him to be in a warm

17  climate.

18          MS. DEVINE:  Yes, Your Honor.  Thank you.

19          THE COURT:  What else?  I know we said a bunch of

20  things.  Remind me.

21          MS. DEVINE:  The doctor has recommended, and we

22  are asking to continue to recommend, a lower bunk; but

23  mostly, I think, that he just needs medical attention and

24  evaluation, wherever he gets to and where he's going to be

25  living, for his diabetes.

1          THE COURT:  Let me just turn to the report so I'm

2    certain I cover everything.  Okay.  He needs medical

3    attention because he suffers from diabetes, and he takes

4    daily prescribed medication.

5          Are you on insulin?  Or are you on something else?

6          MS. DEVINE:  I think insulin pills.

7          THE COURT:  Pills as opposed to a shot.

8          MS. DEVINE:  Yes, Your Honor.

9          THE COURT:  He's on insulin pills.  Those need to

10   be continued.  He needs to be evaluated for his eye problems.

11   He needs to be evaluated for the pain and numbness in his

12   fingers to make certain he doesn't have something

13   cardiovascular, when I hear that.  Maybe he has something

14   neurological.

15          He suffers from high cholesterol that needs to be

16   addressed.  Are you on medication for cholesterol?  High

17   cholesterol?

18          MS. DEVINE:  Yes, Your Honor, he is.

19          THE COURT:  He's on medication for that.  He needs

20   to continue his medication for cholesterol.

21          How about for arthritis?

22          MS. DEVINE:  Not at the moment, Your Honor.

23          THE COURT:  He needs to get some kind of treatment

24   for the arthritis, whether it's medication or an exercise

25   regimen or something.  He needs to be placed in a lower bunk

1  so it's not so hard for him to climb up.  Okay.  And my

2  recommendation -- my strong urging to the Bureau of Prisons

3  is that he be placed in a warm climate, which is also upon

4  his doctor's request.

5          Remind me, in the letter that he read, he said

6  something else.

7          MS. DEVINE:  He's very interested in mechanics and

8  electrical systems, especially in regard to vehicles.

9          THE COURT:  So that he be allowed to take

10  vocational training in mechanics and electrical systems.

11          MS. DEVINE:  And computers, Your Honor.

12          THE COURT:  And computers.  And with respect to

13  the electrical systems, especially in regard to vehicles,

14  likewise mechanics.  Electrical system with respect to

15  vehicles specifically, but also generally.

16          Does he wish to take English as a second language?

17          MS. DEVINE:  He does.  He already speaks a lot of

18  English.  He and I can converse, not legally, but he has good

19  conversational English.  I think he would like to advance

20  that.

21          THE COURT:  English as a second language, although

22  he has some limited ability to speak English.  And his

23  ability to read and write in Spanish, it's good?

24          MS. DEVINE:  Yes, Your Honor.

25          THE COURT:  Because some of the gentlemen we see

1  are not literate in Spanish.  So I certainly want to at least

2  try to accomplish that, but it sounds like he is.

3          Anything else for your client, Miss Devine?

4          MS. DEVINE:  No, thank you very much.

5          THE COURT:  You are welcome.

6          Mr. Chalela, how about for your client?

7          MR. CHALELA:  Your Honor, he primarily also adopts

8  the intent through respectfully requesting the opportunity to

9  earn a living so that he can send money to his --

10         THE COURT:  So is the No. 1 priority to

11 participate in a Unicor program?

12         MR. CHALELA:  Yes, Your Honor.

13         THE COURT:  Even if they send him to what's a cold

14 climate?  Minnesota or North Dakota, if there is a federal

15 prison there, does he understand that that --

16         MR. CHALELA:  (*Spanish phrase*), he says.

17         THE COURT:  Okay.  Well, it may be North Dakota.

18 As long as he recognizes that.  Well, my No. 1

19 recommendation, then, to the Bureau of Prisons is that he

20 participate in the Unicor program, wherever it may be,

21 because he wants to earn money to send back to his family.

22         MR. CHALELA:  Thank you.  The secondary request is

23 that he would like to better his English and earn a diploma

24 or a certificate in computers.

25         THE COURT:  Very good, that he take English as a

second language and that he take vocational classes so that
he can learn computer skills.  Anything else that you can
think of that would help him?  Any health issues I need to
call to their attention?  Anything else?

MR. CHALELA:  No.  We appreciate Your Honor taking
the time for these considerations.

THE COURT:  No problem.

Let's see, Mr. Luna, what would your client like?

MR. LUNA:  My client would also like the
opportunity to work and be able to make some money to send to
his family.

THE COURT:  And wherever they send him, so be it.

MR. LUNA:  That's correct.

THE COURT:  I recommend that he participate in the
Unicor program so he can earn money to send back to his
family and friends, irrespective of where in the
United States it happens to be.  Anything else?  I'm not
going to push substance abuse.  Those are precious spaces
available in our prisons for people who really need them.  If
he doesn't want it -- you know, he's going back to Nicaragua.
That's his decision.  If he doesn't think he has a problem,
we will save that spot for somebody who thinks he does.  It
has to be somebody who wants to be there.

MR. LUNA:  I understand, Your Honor.

THE COURT:  Does he want it or not?  Whatever he

1  wants to do is fine by me.

2          MR. LUNA:  He would take advantage of whatever

3  programs there is, Judge.

4          THE COURT:  Okay.  I recommend that he be

5  evaluated for -- he also uses alcohol more than what I think

6  one should use.  So I recommend that he be evaluated for

7  substance abuse programs, whether it's alcohol or marijuana.

8  He's acknowledged he's a regular user of alcohol and

9  marijuana, so he needs some substance abuse treatment

10  programs.

11          What else can I recommend for him?  Educationally,

12  vocationally?

13          MR. LUNA:  Yes, Your Honor.  Vocationally he's

14  interested in mechanics.

15          THE COURT:  Okay.  I recommend that he take

16  vocational classes in mechanics.  Like general mechanics?

17          MR. LUNA:  Automobile mechanics.

18          THE COURT:  Automobile mechanics.  All right.  And

19  what else?  How about educationally, anything else?

20          MR. LUNA:  English classes.  He does speak a

21  little bit of English.

22          THE COURT:  Okay.  This is to become more

23  proficient and learn to read and write in English, too.  I

24  recommend that he take English as a second language so he can

25  improve his English language skills.

1        Anything else educationally you can think of or

2  vocationally?

3        MR. LUNA:  That's all that I can think of.  He has

4  no health issues.

5        THE COURT:  Thank you.

6        Last we have Mr. Castillo.  What would your client

7  like?  Is it also Unicor, wherever it happens to be?

8        MR. ARMINGTON:  Yes, ma'am.

9        THE COURT:  I recommend that he be housed wherever

10  the Unicor program would be made available to him, wherever

11  in the United States that happens to be.  His drug problem

12  didn't seem as bad to me as the other gentleman.  Couple of

13  times a month.  I don't know, what would he like to do?  He

14  doesn't need to do it.

15        MR. ARMINGTON:  Judge, in the PSR, it mentions he

16  also said that marijuana didn't do anything for him.  He just

17  occasionally smoked with friends.  He tells me he doesn't

18  think he has a problem.  So that's correct, he's not seeking

19  drug treatment.  But as I mentioned earlier, he would like to

20  study English, reading and writing, electricity, computers,

21  and carpentry.

22        THE COURT:  I recommend that he take English as a

23  second language so he's able to learn to speak it better and

24  to read and write and that he also take vocational classes in

25  electricity, computers, and carpentry.

1          Anything else that you can think of?

2          MR. ARMINGTON:  No.  Thank you, Judge.

3          THE COURT:  I think I covered everything that I

4    need to.  Did I leave anything out from probation's

5    perspective?

6          THE PROBATION OFFICER:  No, Your Honor.

7          THE COURT:  From the government's perspective?

8          MR. FURR:  You left out nothing.  Thank you.

9          THE COURT:  Thank you.  I was waiting for you to

10   tell me what I did leave out.  Thank you, Mr. Furr.

11         All right.  Miss Devine, anything else?

12         MS. DEVINE:  No, thank you, Your Honor.

13         THE COURT:  Mr. Morais, good luck to you.  I hope

14   your health improves.

15         Mr. Chalela, anything that I may have left out?

16         MR. CHALELA:  No, thank you, Your Honor.

17         THE COURT:  Good luck to you, Mr. Hernandez.

18         Mr. Luna, anything I left out?

19         MR. LUNA:  No, thank you.

20         THE COURT:  Best wishes to you, Mr. Ortiz.

21         And, Mr. Armington?

22         MR. ARMINGTON:  No, Your Honor.

23         THE COURT:  Okay.  Good luck to you, Mr. Castillo.

24         We are in recess.

25              (Proceedings concluded at 10:01 a.m.)

UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )


# C E R T I F I C A T E

I, Scott N. Gamertsfelder, Official Court Reporter for

the United States District Court, Middle District of Florida,

do hereby certify that pursuant to Section 753, Title 28,

United States Code that the foregoing is a true and correct

transcript from the stenographic notes taken in the

above-entitled matter by the undersigned and that the

transcript page format is in conformance with the regulations

of the Judicial Conference of the United States.


/S/Scott Gamertsfelder, RMR, FCRR
Official Court Reporter          Date: August 5, 2016

- - -